UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

FREEMAN & HASSELWANDER RESORT PROPERTIES, L.L.C., A FLORIDA LIMITED LIABILITY COMPANY,

Plaintiff,

v.

Case No. 2:26-cv-2077-KCD-NPM

GLENN DOCTER,

Defendant/Third-Party Plaintiff,

ARC ISLAND MARINE, LLC d/b/a ARC MARINE CONTRACTING and ACRA ELECTRIC, INC.,

Third-Party Defendants.
_______________________________/

# ORDER

This case stems from a collapsed boat lift. Plaintiff Freeman & Hasselwander Resort Properties owns Tarpon Point Marina. Defendant Glenn Docter rented a slip at the marina for his boat, the *Board Meeting*. When Docter's boat lift failed—dropping his vessel into the water and damaging the adjacent dock—Plaintiff sued. (Doc. 2.) Relying on a provision in Docter's lease agreement, Plaintiff says he is responsible for the salvage and repair costs. (*Id.* ¶ 25.)

Docter, in turn, has brought third-party claims for contribution and common-law indemnity against ACRA Electric, Inc., a marine electrical company hired by the marina. (Doc. 19 ¶ 15.) ACRA now moves to dismiss both claims. (Doc. 36.) The Court finds that the contribution claim fails, but the indemnity claim survives, so the motion to dismiss is **GRANTED IN PART AND DENIED IN PART**.

## I. Background

As mentioned, Docter leased a slip at Tarpon Point Marina. The lease agreement, as well as the marina's rules and regulations, apparently obligate Docter to pay expenses related to emergencies or sinking, as well as maintenance costs associated with the boat lift. (*See* Doc. 2-1, 2-2.)

On April 17, 2024, Plaintiff directed ACRA to the marina to "verify electrical work they had previously completed related to the boat lift and/or other electrical work performed at the marina." (Doc. 19 ¶ 15.) Docter alleges that an ACRA employee pressed the "up" button on the lift's remote, a cable parted, the lift collapsed, and the vessel became partially submerged. (*Id.* ¶ 19.) The resulting emergency salvage, dock repairs, and boat lift replacement cost $169,233, a sum Plaintiff now seeks to recover from Docter under their lease. (*Id.* ¶¶ 21-22.)

Docter brought the salvage company (ARC Marine) and ACRA into the case by filing a third-party complaint for contribution and common-law

indemnity. (Doc. 19.) Docter, who wasn't at the marina that day, alleges that the acts and omissions of those parties "are the sole proximate cause of Plaintiff's damages; therefore, ARC Marine and ACRA Electric are jointly and severally liable for the damages incurred by Freeman & Hasselwander." (*Id.* ¶ 23.) Docter, alleging that he is completely without fault, claims that his liability is "solely vicarious, constructive, special, technical, or derivative in nature." (*Id.* ¶ 24.)

## II. Legal Standard

To survive a motion to dismiss, "a complaint must contain sufficient facts, accepted as true, to state a facially plausible claim for relief." *Galette v. Goodell*, No. 23-10896, 2023 WL 7391697, at *3 (11th Cir. Nov. 8, 2023). "A claim is facially plausible if it pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The question here is not whether the plaintiff will ultimately win, but simply whether the complaint can proceed into discovery.

At this starting gate, we must accept the complaint's factual allegations as true and construe them in the light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). That benefit of the doubt, however, has limits. The court is not bound to accept legal conclusions dressed up as factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading that offers nothing more than "labels and conclusions"

or a "formulaic recitation of the elements of a cause of action" will not unlock the courthouse doors. *Id.* In short, the plaintiff must tell a factual story that makes the defendant's liability plausible, not just point a finger and recite the law. *See, e.g.*, *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

## III. Discussion

### A. Contribution (Count III)

Docter's contribution claim alleges that ACRA owed him a duty to exercise reasonable care in performing the electrical work but breached that duty. So, he concludes, ACRA should have to pay a "proportionate share of liability." (Doc. 19 ¶ 51.) ACRA argues that these allegations show nothing more than comparative fault, and because Florida has abolished joint and several liability, comparative fault is a defense rather than a claim. (Doc. 36 at 7.) Docter responds that ACRA is a joint tortfeasor with ARC Marine and is thus liable for its pro rata share of the resulting damages. (Doc. 41 at 6.)

Both parties miss the mark. In Florida, the right to contribution exists only in favor of a *tortfeasor* who has paid more than their share of common liability. *See* Fla. Stat. § 768.31(2)(b) ("The right of contribution exists only in favor of a *tortfeasor* who has paid more than her or his pro rata share of the common liability, and the *tortfeasor's* total recovery is limited to the amount paid by her or him in excess of her or his pro rata share." (emphasis added)).

Contribution is unavailable here because the underlying action is based in contract rather than a tort concept of fault. (*See* Doc. 2); *Palomares v. Jeld-Wen, Inc.*, No. 08-20477-CIV, 2008 WL 11333224, at *5 (S.D. Fla. July 11, 2008) ("Contribution . . . is not available for a contract-based action.").

Put simply, Docter cannot use contribution (a tort defense) to split the bill for a broken contract. *See Iowa Mut. Ins. Co. v. Lopez*, 444 So. 2d 1021 (Fla. Dist. Ct. App. 1984); *Helmet House Corp. v. Stoddard*, 861 So. 2d 1178 (Fla. Dist. Ct. App. 2003).[1]

Docter protests that ACRA and ARC Marine both owed him a duty, caused the damage, and thus are "joint tortfeasor[s]." (Doc. 41 at 6.) But contribution is not a mechanism for recovering your own losses. By alleging that ACRA breached a duty owed directly to *him* and wrecked *his* property, Docter is not pleading a right to contribution. He is describing a garden-variety negligence claim. While those allegations might perfectly frame a direct tort action against ACRA and ARC Marine, they cannot be shoehorned into a third-party claim for contribution to reduce his contract debt to Plaintiff. *See Lydia Sec. Monitoring, Inc. Alarm One, Inc. v. Lydia Sec.*

---

[1] There seems to be a narrow path for contribution in cases involving joint contractual obligations. *See e.g.*, *Desrosiers v. Russell*, 660 So. 2d 396 (Fla. Dist. Ct. App. 1995). In *Desrosiers*, the court held that "when a person pays more than his share of a common obligation, the law gives him the remedy of contribution to obtain from the other obligors payment of their respective shares of the obligation." 660 So. 2d at 397. But there are no allegations here that Docter had a written agreement with ACRA or ARC Marina, or that there are shared contractual obligations with Plaintiff.

*Monitoring, Inc.*, No. 07-80145 CIV, 2008 WL 11406037, at *4 (S.D. Fla. Feb. 21, 2008).

**B. Common Law Indemnity (Count IV)**

Common law indemnity is a claim that "shifts the entire loss from one who, although without active negligence or fault, has been obligated to pay, because of some vicarious, constructive, derivative, or technical liability, to another who should bear the costs because it was the latter's wrongdoing for which the former is held liable." *Houdaille Indus., Inc. v. Edwards*, 374 So. 2d 490, 493 (Fla. 1979). "Indemnity rests upon the fault of another which has been imputed to or constructively fastened upon the one seeking indemnity, and there can be no indemnity between joint tortfeasors." *Id.*

"In order to properly plead a cause of action for common law indemnity, the party seeking indemnity must allege in his complaint 1) that he is wholly without fault; 2) that the party from whom he is seeking indemnity is at fault; and 3) that he is liable to the injured party only because he is vicariously, constructively, derivatively, or technically liable for the wrongful acts of the party from whom he is seeking indemnity." *Fla. Farm Bureau Gen. Ins. Co. v. Ins. Co. of N. Am.*, 763 So. 2d 429, 435 (Fla. Dist. Ct. App. 2000). In Florida, actions for indemnity have been restricted to situations involving either a duty, an express contract, or the existence of active and passive negligence. *See Stuart v. Hertz Corp.*, 351 So. 2d 703 (Fla. 1977).

ACRA insists that Docter's claim for common law indemnity is insufficiently pled because he did not (and cannot) allege that there was a "special relationship" between the two parties. As ACRA points out, it was Plaintiff who requested the electrical work, not Docter. *See Dade Cnty. Sch. Bd. v. Radio Station WQBA*, 731 So. 2d 638, 642 (Fla. 1999) ("Florida courts have required a special relationship between the parties in order for common law indemnification to exist." (citing *Houdaille*, 374 So. 2d at 493).)

That argument falls flat. "The term 'special relationship' merely describes a relationship which makes a faultless party only vicariously, constructively, derivatively, or technically liable for the wrongful acts of the party at fault." *Diplomat Props. Ltd. P'ship v. Tecnoglass, LLC*, 114 So. 3d 357, 362 (Fla. Dist. Ct. App. 2013). "The Florida Supreme Court's analysis in *Houdaille* strongly suggests that the other three terms, constructive, derivative, and technical, are meant merely to capture the concept that the party seeking indemnity must be without fault." *Auto-Owners Ins. Co. v. Ace Elec. Serv., Inc.*, 648 F. Supp. 2d 1371, 1379 (M.D. Fla. 2009); *see also In re Mills*, 605 B.R. 549, 557, n.5 (Bankr. S.D. Fla. 2019) (finding that a "special relationship" is inherent in the third element of a common law indemnification claim).

Here, Docter alleges that he is fully without fault, that ACRA is at fault because of its negligence that caused damage to the vessel and dock, and that

Docter is liable to Plaintiff for those damages. (Doc. 19 at 13.) These facts cover all the elements. "Therefore, consistent with *Houdaille* and the spirit and purpose of common law indemnity in general, we find that [Docter] sufficiently pleaded a cause of action for common law indemnity against [ACRA]." *Fla. Peninsula Ins. Co. v. Ken Mullen Plumbing, Inc.*, 171 So. 3d 194, 197 (Fla. Dist. Ct. App. 2015).

ACRA also argues that the indemnity claim fails because Docter could be liable for his own wrongdoing in breaching the contract, so he is not wholly without fault. But under Florida law, a purely contractual liability does not constitute the kind of active "fault" that sinks an indemnity claim. For example, in *Fla. Peninsula Ins.*, the insurer was sued for breach of contract for refusing to pay a claim, and the court found that the breach did not constitute fault that would bar indemnity. 171 So. 3d 194. There, as here, the insurer's liability arose solely from its contractual obligation to cover losses, not from any active negligence or wrongdoing that caused the damage itself. *Id. See also Diplomat Props. Ltd. P'ship v. Tecnoglass, LLC*, 114 So. 3d 357 (Fla. Dist. Ct. App. 2013) ("a party's liability for breach of contract can form the basis for an indemnification claim against a third party"); *Hiller Grp., Inc. v. Redwing Carriers, Inc.*, 779 So. 2d 602, 603-04 (Fla. Dist. Ct. App. 2001). The Court is satisfied that Docter has sufficiently pled a claim for indemnification.

## IV. Conclusion

For these reasons, ACRA's Motion to Dismiss Third-Party Complaint (Doc. 36) is **GRANTED IN PART AND DENIED IN PART**. The motion is granted as to Count III but denied as to Count IV. Docter has not requested leave to amend, *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002), so ACRA must answer the remaining claims in the third-party complaint within 14 days.

**ORDERED** in Fort Myers, Florida on November 10, 2026.

Kyle C. Dudek
United States District Judge